**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **MIKAL WALI NAJI,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 4:09-CV-435-Y** |
| **RICK THALER,  Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the

provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for

the Northern District of Texas.  The Findings, Conclusions, and Recommendation of the United

States Magistrate Judge are as follows:

**I.  FINDINGS AND CONCLUSIONS**

**A.  NATURE OF THE CASE**

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

**B.  PARTIES**

Petitioner Mikal Wali Naji, TDCJ-ID #1382637, is in custody of the Texas Department of

Criminal Justice, Correctional Institutions Division, in Abilene, Texas.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice,

Correctional Institutions Division.

**C.  FACTUAL AND PROCEDURAL HISTORY**

Naji is serving two 70-year sentences on his convictions for aggravated robbery with a

deadly weapon in the Criminal District Court  Number Two of Tarrant County, Texas.  (Clerk's R. at 120)  *Naji v. State*, No. 2-06-CV-260-CR, slip op. (Tex. App.–Fort Worth Apr. 26, 2007) (not designated for publication)*; Naji v. State*, PDR No. 957-07; *Ex parte Naji*, State Habeas Appl. No. WR-72,124-01.  The state court of appeals summarized the evidence at his trial as follows:

> On June 29, 2003, the complainant Armaster Lusk was shot in an incident involving Nicholas Fountain and [Naji].  Lusk had known Fountain for about ten years but had met [Naji] only a few times.  At trial, Lusk's fiancé Felicia Atkins testified that on Friday, two days before the shooting, Lusk had come into the liquor store where she worked.  Atkins stated that Fountain and [Naji] also came into the store while Lusk was there.  Lusk bought some gin, which he paid for in cash.  Lusk was carrying about $5900.  According to Atkins, Fountain and [Naji] were facing Lusk when he paid for the gin.  Lusk testified that Fountain and [Naji] did not come into the store but remained outside.

> On the following Sunday, Fountain and [Naji] showed up at Atkins and Lusk's apartment.  Lusk answered the door and Atkins stayed in the bedroom.  Atkins could hear Lusk and the other men talking and watching television.  After about thirty minutes, Atkins went into the kitchen to eat.  She saw Fountain and [Naji] in the living room with Lusk.  She then began ironing clothes with her back to the men.  While she was ironing, [Naji] got up and went to the bathroom.  Atkins heard the toilet flush and then heard someone say, "Get down."  She turned and saw that [Naji] had a towel wrapped around his right hand.  Lusk testified that he saw that [Naji] had a gun in the towel.  Atkins stated that [Naji] pointed his hand toward Lusk, and she heard a bang.  She then heard Lusk go out the front door.  Lusk ran to another apartment for help.

> Fountain, who now had the gun, ran toward her and shoved her down.  She heard [Naji] say that "he [Lusk] got away."  She testified that [Naji] came into the kitchen, took the gun from Fountain, kicked her in the side, and shot at her, although she also testified that she had previously told the police that Fountain had shot at her.  The bullet did not hit Atkins.  She heard the two men running to the bedroom.  She also heard noises like things were being thrown around the apartment and heard [Naji] say, "It's not here.  I don't see it.  It's not here."  A few minutes later, she heard them run out.  She got up, locked the door, and called 911.  Nothing in the apartment was missing.  The $5,900 was in the pocket of the pants Lusk was wearing.

> Officer Brad Patterson visited Lusk in the hospital on the day of the shooting.  At that time, Lusk told Patterson that Fountain had shot him.  On July 8, Lusk identified both Fountain and [Naji] in a photo spread.  Atkins also looked at photo

spreads and identified Fountain but was unable to identify [Naji] and instead identified another man in the spread.  Based on Lusk's identification, an arrest warrant was obtained for [Naji].

In September 2003, Fountain committed suicide.

## D.  ISSUES

Generally, Naji claims (1) the evidence is factually insufficient to support his conviction, (2) he received ineffective assistance of counsel, (3) the state suppressed evidence, (4) his convictions resulted in a miscarriage of justice, and (5) he is entitled to an evidentiary hearing.  (Petition at 7-8A)

## E.  RULE 5 STATEMENT

Thaler believes that Naji has sufficiently exhausted his state court remedies as required by 28 U.S.C. § 2254(b)(1) and that the petition is neither time-barred nor successive.  (Resp's Answer at 5)

## F.  DISCUSSION

### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of

3

law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5ᵗʰ Cir. 2000).

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). Thus, factual determinations by a state court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2), (e); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams*, 529 U.S. at 399. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5ᵗʰ Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

## (1) Insufficiency of the Evidence

Naji claims the evidence is factually insufficient to support his conviction.[1]   (Pet'r Memorandum in Support at 5)  A factual insufficiency claim is not cognizable on federal habeas corpus review. *Woods v. Cockrell*, 307 F.3d 353, 358 (5ᵗʰ Cir. 2002)

---

[1]Although Naji cites to the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), the issue was not raised in the state courts and is not addressed herein.

4

*(2)  Ineffective Assistance of Counsel*

Naji claims his trial counsel provided ineffective assistance because counsel failed to (1) investigate the affidavit of Courtney Guy, (2) present Courtney Guy as a potential witness, (3) object to the state's malicious prosecution of him, (4) reveal exculpatory evidence, and (5) object to Atkins's testimony at trial.  (Pet'r Memorandum in Support at 1-3)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 688.  Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance.  *Id.* at 687, 697.  In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy.  *Id*. at 668, 688-89.  Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight.  *Id.* at 689.

The state habeas judge, who also presided over Naji's trial, conducted a hearing by affidavit and entered findings of fact, which were adopted by the Texas Court of Criminal Appeals, refuting Naji's ineffective assistance claims.  Applying the *Strickland* standard to its factual findings, the state court concluded petitioner had failed to demonstrate that counsel's representation was deficient or that but for counsel's alleged acts or omissions, the result of Naji's trial would have been different.  (State Habeas R. at 96-106)  The state court's findings and conclusions are consistent with the record.  Thus, the state court's factual determinations, including its credibility findings, are

entitled to a presumption of correctness under § 2254(e)(1), absent clear and convincing evidence in rebuttal. *Richards v. Quarterman*, 566 F.3d 553, 563 (5th Cir. 2009).

Naji claims counsel failed to investigate, interview, and call Courtney Guy as a defense witness. According to Naji, Guy would have testified that Lusk and Atkins initially thought Naji participated in the robbery but later conveyed to Guy that Naji was at their home to buy drugs and had nothing to do with the robbery. In response, counsel, who was assisted by two licensed investigators, testified in the habeas proceeding:

> In preparation for trial Mr. Cooper [one of the licensed investigators] and I visited the crime scene, interviewed witnesses, visited the victim's family, and tracked down or attempted to track down any leads provided to us by Mr. Naji. I want to be specific at this point: Mr. Naji never provided information that proved to be helpful to his case.
>
> .        .        .
>
> I investigated every piece of evidence available to me regarding Mr. Naji's case. In fact, I visited Mr. Naji in jail and at dockets and specifically reported to him on each theory he presented to me including information about Guy. The Guy information did not pan out and I specifically discussed that with the applicant. More to the point, the 2008 affidavit of Guy is not exculpatory. The trial testimony of Atkins and Lusk sealed Mr. Naji's fate; that is, he was identified as the shooter. (State Habeas R. at 91).

The state habeas court found counsel's affidavit credible and entered findings consistent with counsel's testimony–specifically, that counsel reported to Naji on each theory including information on Guy, discussed the value of Guy's information, advised Naji that the information regarding Guy did not prove to be helpful, and did not call Guy as a witness because the information "did not pan out." The court further found that Guy's signed declaration, produced in 2008 over five years after the robbery, is not evidence that counsel failed to investigate, interview, or consider Guy as a possible defense witness or that Guy's testimony would have benefitted the defense. To the contrary, the state court found that Guy's declaration confirms that Naji was present at the robbery.

6

Applying the *Strickland* standard, the state court concluded that counsel's decision not to subpoena or call Guy as a witness was the result of reasonable trial strategy and that Naji had not shown a reasonable probability that Guy's information at the time of trial would have changed the result of the trial proceedings.   The state's court's adjudication of the claim is not objectively unreasonable nor is it contrary to or involve an unreasonable application of *Strickland*.   The presentation of testimonial evidence is a matter of trial strategy and counsel's decisions in this regard are virtually unchallengeable and generally do not provide a basis for habeas corpus relief on the grounds of ineffective assistance of counsel.  *Knowl es v. Mirzayance,* --- U.S. ----, 129 S. Ct. 1411, 1420 (2009); *Strickland,* 460 U.S. at 689.

Naji claims counsel was ineffective by failing to object to the state's malicious prosecution and use of perjured testimony.  Naji alleges the prosecutor's intent was malicious because the real perpetrator, Fountain, had been killed and he was the person the state chose to pay for the crime. In reply, counsel testified that he had no evidence at any time that the state was engaging in malicious prosecution.  The state habeas court found that Naji had failed to prove that a reasonable probability exists that the result of his trial would have been different had counsel accused the state of malicious prosecution.  Absent clear and convincing evidence to show malicious prosecution on the part of the state, the state habeas court's adjudication of the claim is not unreasonable nor is it contrary to or involve an unreasonable application of *Strickland*.  Counsel is not required to make frivolous objections.  *See United States v. Gibson,* 55 F.3d 173, 179 (5th Cir. 1995).  Furthermore, federal courts do not consider a habeas petitioner's bald assertions on a critical issue, unsupported by anything else contained in the record, to be of probative value. *See Ross v. Estelle*, 694 F.2d

1008, 1011 (5th Cir. 1983).

Naji claims counsel was ineffective because he is responsible for the state's *Brady* violation in failing to present exculpatory evidence that would have been favorable to his defense in the form of a letter by him to the trial court stating that Lusk had Fountain killed in retaliation for the robbery and that Lusk and Atkins gave perjured statements to the police (Exhibit A), the signed declaration by Guy (Exhibit B), two signed declarations by him, one stating that Guy warned him about Lusk's threats to kill Fountain and him in retaliation and the second that Atkins told him Lusk had made a mistake by thinking he had something to do with the robbery (Exhibits E and F), and a letter by him to counsel requesting counsel ask the judge to charge Lusk with murdering Fountain (Exhibit K).  (Petition, Exhibits A, D, E, F and K)

The state habeas court found Naji had not shown a failure by the state to turn over exculpatory evidence, that counsel was responsible for any *Brady* violation, or a reasonable probability that the result of his trial would have been different had counsel presented a different defense or accused the state of *Brady* violations.  Absent clear and convincing evidence demonstrating a *Brady* violation, such showing not having been made by Naji, the state court's adjudication of the claim is not unreasonable nor is it contrary to or involve an unreasonable application of *Strickland.*  To establish that evidence falls within the purview of *Brady,* a petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material.  *See Smith v. Black,* 904 F.2d 950, 963 (5th Cir. 1990).  The contents of the documents cited by Naji were known to the defense before trial.  The *Brady* rule does not apply when the defendant is already aware of the information.  *See Graves v. Cockrell,* 351 F.3d 143, 154 (5th Cir. 2003); *Kutzner v. Cockrell,* 303 F.3d 333, 336 (5th Cir. 2002).  Thus, any objection by counsel on *Brady* grounds would have been

8

frivolous.  Counsel is not required to make frivolous objections.  *See Gibson,* 55 F.3d at 179.

Naji claims counsel was ineffective by failing to object to inconsistent and allegedly false testimony of Atkins.  The state habeas court found that counsel properly cross-examined Atkins on the problem areas and inconsistencies in her testimony and recalled Officer Donald Lancaster to testify that Atkins told him that only Fountain shot at her.  Under the circumstances, the state court concluded Naji had not shown ineffective assistance or a reasonable probability that the result of his trial would have been different had counsel objected to Atkins's testimony.  The state court's adjudication of the issue is not unreasonable nor is it contrary to or involve an unreasonable application of *Strickland*.  It is not counsel's burden at trial to object to inconsistent or purportedly false testimony at every turn.  It is counsel's role to question the witnesses in an effort to raise doubt in the minds of the trier of fact who ultimately makes the credibility determinations regarding the truth and consistency of witness testimony.  Naji has not identified what counsel should have otherwise done to show that Atkins's testimony was false nor does he identify a valid objection to her testimony.

Naji presents no compelling argument or evidence to overcome the strong presumption that his trial attorney was competent, that but for counsel's alleged acts or omissions, the jury would have acquitted him, or that the state courts' adjudication of the issue was unreasonable.

*(3)  Brady Violation*

Naji claims the state violated *Brady* by withholding a letter by him to the trial court stating that Lusk had Fountain killed in retaliation for the robbery and that Lusk and Atkins had given perjured statements to the police (Exhibit A) and a letter by him to the state requesting the state bring forward information at trial that Lusk, Atkins and their family members had Fountain killed

9

and had threatened to kill him and that Lusk and Atkins accused him of participating in the robbery to "get him out of the way" (Exhibit L).  (Petition, Exhibits A and L)

The state habeas court concluded Naji had failed to prove a *Brady* violation had occurred because the state is not obligated to produce material of which the defendant already had knowledge.  The state court's determination is not contrary to or involve an unreasonable application of *Brady* nor is it based on an unreasonable determination of the facts in light of the evidence in the state court proceedings.  *See United States v. Dixon*, 132 F.3d 192, 199 (5th Cir. 1997).

## *(4)  Fundamental Miscarriage of Justice*

Naji claims, based on the state's and his counsel's failure to present the favorable evidence cited above, his convictions resulted in a fundamental miscarriage of justice and are fundamentally unfair as a matter of due process because the evidence shows he is actually innocent.  In support, he cites the court to the Supreme Court case of *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  To establish actual innocence under *Schlup,* a petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.  *Id.* at 327-28.  To be credible, an actual innocence claim requires a petitioner to support his allegations of constitutional error with new reliable evidence, whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial.  *Id.* at 324.  A federal court must make its determination concerning the petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted, wrongly excluded or to have become available only after the trial.  *Id.* at 328.  In Naji's case, he complains the excluded evidence would have demonstrated his actual innocence.

The state habeas court, quoting state law, noted that *Schlup* "does not by itself provide a

10

basis for [habeas] relief,' but is intertwined with constitutional error that renders a person's conviction constitutionally invalid."  The court concluded Naji had not proved he was subjected to a miscarriage of justice or fundamental unfairness under *Schlup*.  The state court's determination is not contrary to or involve an unreasonable application of *Schlup* nor is it based on an unreasonable determination of the facts in light of the evidence in the state court proceedings.  Under the *Schlup* standard, it can not be said that it was more likely than not that the evidence cited by Naji would have changed the jury's verdict in his case.

### (5)  Evidentiary Hearing

Petitioner seeks an evidentiary hearing for purposes of further developing the record in support of his claims.  *See* 28 U.S.C. § 2254(e)(2).  Section 2254(e)(2) provides:

> (e)(2)  If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
> >  (A)  the claim relies on–
> > >  (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >  (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >  (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Naji has not met the statutory criteria.  The case can be decided on the record, and the interests of justice do not require a hearing.  Further development of the record is not necessary in order to assess the claims.

## II.  RECOMMENDATION

Based on the foregoing, it is recommended that Naji's petition for writ of habeas corpus be

denied.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until May 19, 2010.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until May 19, 2010, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the

12

United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April 28, 2010.


   /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE